Nash, C. J.,
(dissentients.) I do not agree with my brethren in this case. To me their opinion appears to be a departure from principle.' The jurisdiction of a Court of Equity., in matters .of fraud,, is not -questioiied. That the ■case before us discloses a gross case of fraud between the ■elder Pitt and his children, will not .he denied, and the plaintiff, one of the -.creditors- intended to be defrauded, .prosecuted his-claim to judgment, had .the execution levied on the .property so conveyed, and became himself the purchaser. The bill is filed, to call in*and have cancelled the •deed made to .the defendant Pitt. The power of .a .Court, ■in the cancellation of deeds fraudulently obtained, is recog-nised by every writer on equity jurisprudence, .and is not *66 now disputed; but my brethren deny that it applies to a case like this, of a purchaser at a sheriff !s sale.
Justice Story, in his treatise on Equity Jurisprudence, s. 698, observes, that the question has often arisen, how far Courts of Equity ought to interfere to decree deeds or other solemn instruments, to be delivered up and cancelled, which are utterly void and not merely voidable. The doubt rested upon the principle, that a Court of Equity will not interfere in a case, where a Court of Law can give full and adequate relief. In s. 700, he states, whatever doubts or difficulties may have been entertained formerly upon this subject, they seem by the most modern decisions to be put to rest, and the jurisdiction is now maintained in its fullest extent; and he further remarks, that the decisions are founded on the principles of equity being not merely remedial, but also preventive of injustice. If an instrument ought not to be used or enforced, it is against conscience to retain it, as he can do so only for some improper purpose.. If it be a deed purporting to convey lands and other hered-itaments, its existence in an uncancelled state necessarily has a tendency to throw a cloud. Honeywood v. Dimmsdale, 17 Ves. 111; Pierce v. Webb, 3 Bro. C. R. and Mr, Betts’ note, and the authorities cited by Justice Story. The principle is, that the paper, while it exists, is always liable to be improperly used, and may be so used at such a distance of time, that the proper evidence to repel it may have been lost. St. John v. St. John, 11 Ves. 535; Hamilton v. Cummings, 1 John C. R. 524. In the language of Lord Eldon, (17 Ves. 111): “I conclude that there is a, jurisdiction in this Court, to order a deed forming a cloud upon the title to be delivered up, though that deed is void at laio, more especially where the deed is not upon its face void. The first question presented by this case, is, does the conveyance made by old Mr. Pitt form such a cloud uj>on the title of the plaintiff to the premises in question, as to- *67 living bis case within the general principle ? If so, is there anything in the case of the plaintiff to take it out of its operation ? As to the first: the conveyance from Belcher to the father, and from him to his daughter, being to defraud his (Belcher’s) creditors, is void both in law and in equity, but its fraudulent character does not appear upon its face-: there all is apparently fair: and its objectionable •character is manifested by extrinsic circumstances dependent upon^ parol evidence, and is- susceptible of being used by the grantee at any time, in opposition to the title under which the plaintiff claims. It is then a cloud.
The" second point is the important one, upon which, with great deference, I differ with my brethren. To me, it ap-peará perfectly plain, that the plaintiff is entitled to the aid of this Court. It is not denied that any one of the creditors of Belcher, at the time the conveyance was made to Pitt, and from Pitt to his daughter, could have maintained a bill for the relief here sought; but it is insisted, that a purchaser at the execution cannot. First, because no case can be found in the English Reports of such a bill. I have been able to find no such case, and the learned counsel for the plaintiff has produced none. It is always gratifying to me,.in the discharge of my official duties, to find in those able Reports, cases, which investigate principles contested before the Court, and when they decide a question, I am ever inclined to take them as my guides. But, though the absence of authority is often a good reason for not establishing a precedent, it has never been considered ■as imperative, and there is goo$ reason why purchasers in England should not resort to chancery, when they can get ■at law a redress, which, though not complete, may be satisfactory. The delays and expenses of a chancery suit there may well dispose a person, having a case examinable in both Courts, to pause before throrving himself into the latter. But the absence of authority can only throw us *68 back upon our own resources, as to tbe principle and reason of the case. Upon this point, however, I am not without authority to sustain my opinion. Our attention was drawn to the case of Frakes v. Brown, 2 Blackford’s Rep. 295. The substance of that case is, a Mrs. Jones obtained a divorce from her husband Reuben Jones, and a decree for $500 as alimony. An execution to raise the money was issued and duly levied on the land in question, as the property of Jones, the husband, and the plaintiff became the purchaser.. During the pendency of the suit for the divorce, Jones, the husband, to evado any recovery for alimony, fraudulently conveyed the land to Frakes. • The bill was to set aside the conveyance to him, as fraudulent and void, and the Court sustained the bill, though demurred to: and so decreed- I have always understood that the decisions of the Supreme Court of Indiana are of high authority in her sister States.
It is further objected, that the plaintiff does not come into Court under such circumstances, as to entitle him to favorable regard — that knowing the existence of this cloud, he pressed his claim against his debtor to judgment, and purchased on speculation — that he ought to have filed a creditor’s bill, so as to have shared the fund with them all. He certainly might have done so, but I know of no principle in equity which required him to do so. Mr. Adams, at page 480, says: “ One creditor may file his bill, if he pleases, praying payment of his own debt, but the more-usual course is, for one or more of the creditors to sue for all. Upon this point, therefore, I conclude that the plaintiff could have filed his bill alone for the payment of his debt, without joining the other creditors, upon the principle vigilantibus non dormientibus servat lex- It is not denied that a creditor, under such circumstances, may file Ms bill, not only to subject the property so fraudulently -conveyed, but also to call in and have cancelled the convey- *69 .anee forming a cloud upon Ms title. In this case, the plaintiff was a creditor of Belcher, and is also a purchaser, and it seems strange to me, that as soon as he clothes himself with the latter character he bares himself of the former. A purchaser at a sheriff’s sale purchases subject to all the equities existing against the defendant, and attaching upon the lands sold, and I should think is entitled to all the equities to sustain his title. The purchaser necessarily represents and stands in the shoes of the creditor. Reid v. Kinnemon, 8 Ire. Eq. 13; Johnston v. Cawthorn, 1 De. and Bat. Eq. 32. It is true, in this case, the plaintiff had ceased to be' a creditor: by his purchase his debt was paid; but if the doctrine established in the above cases be sound, and by his purchase he was clothed with the equity of the creditor, I repeat I cannot conceive by wh.at principle he is stripped of the former. Suppose he had not been a creditor, but had at the time of the sale been ignorant of the cloud hanging over the title, would the doors of the Court of Chancery be closed against him.? I think not. Yet the opinion of my brethren must go that length. Again, suppose the plaintiff, instead of purchasing as he has done, had for a fair price and valuable consideration purchased from the fraudulent donor, his title would have been good, though made with a knowledge of the fraudulent conveyance. Clawson v. Burgess, 2 Dev. Eq. 13 ; Freeman v. Eastman, 3,Ired. Eq. 81; Buckle v. Mitchell, 18 Ves. 111. Both of the last cases were upon titles acquired upon voluntary settlements, involving no question of actual fraud; yet the purchaser, for a fair ánd Iona fide consideration, was aided in a Court of Equity, and in the latter, Sir William G-RANT observed: “ If a settlement were shown to be really fraudulent, in the ordinary acceptance of the word, I presume it would not be contended that the Courts would, out, of regard to such settlement, refuse to give the party purchasing, with notice, the benefit of his contract.”
*70 These cases are cited, to show that a purchaser from a fraudulent grantor or donor will be aided by a Court of Equity in protecting his title, although he purchases with full notice of the fraudulent conveyance. And in WALKER AND OTHERS, 1 At. 94, and in Oxley & Lee, 1. At. 025, the same principle is declared by Lord Hardwicke, where the deed forming the cloud is accompanied with circumstances of fraud. If, tiren, a purchaser for a full consideration from a fraudulent donor, can ask and receive the aid of a Court of Equity, in removing a cloud on his title, though he had full notice, at the time of his contract, of its existence, I cannot see why a purchaser at an execution sale of the same premises, under a judgment against the same donor, though having notice of the fraudulent conveyance, is not entitled to the same equitable relief. I think, then, that I am justified in concluding that, as a general principle, the purchaser of real estate, under an execution sale, acquires all the equitable rights of the creditor, the plaintiff in the execution, and is subject to ail equities in the hands of others.
It is further said, that, if the conveyance from Belcher to Pitt, and from him to his daughter, were to defraud, hinder and delay his, Belcher’s, creditors, it was valid at law. and that, therefore, there was no necessity for the plaintiff to come here. He could effectually both defend himself in an ejectment, brought by the fraudulent donee, and could recover the possession from him. This question is answered by Lord IIardwtcke, in the case of Bennet and Mus-grove, 2 Ves. 51. His language is: “ Where a subsequent purchaser, for a valuable consideration, would recover the estate, and set aside or get the better of a fraudulent voluntary conveyance, if that conveyance vrere fairly made, (lu-is speaking of a voluntary settlement,) without actual fraud. the Court will say, take your remedy at law,” But, where the conveyance is attended with actual fraud, though they *71 might go to law by ejectment, and recover the possession, they may come into this Court to set aside -the conveyance. Sug. L. of Vendors 475.
But'again, it is said, that to allow the plaintiff in this case- to come into a Court of Equity to remove this cloud, would be to reward him for a course of conduct not just to the other creditors of the defendant; that the premises purchased by him ought to have formed a common fund, to be appropriated to their several debts, and that ho purchased under this cloud, and ought to be content with the title a Court of Law would' secure him. It' might have been made a joint fund, if the other creditors had chosen to take the necessary measures; but they did not, and it has been shown that the plaintiff was under no obligation, equitable or legal, to take care of them. Nor can I consent to consider the plaintiff in this case as a speculator, any further than every purchaser at a sheriff’s sale maybe so considered. No man purchases either at public or private sale, but for his own benefit, either in the use of the property or on .a re-sale; and, in that sense, the lav/ encourages the speculation. If there be but one single bid, no matter what proportion it bears to the real value of the property, the sheriff’ may sell, and the purchaser acquires a good title, if there is no fraud between the officer and the purchaser. Executions /are the end and spirit of the law, and it is of the utmost importance both to debtors and purchasers, that the rights of each should be protected. While, therefore, the law forbids all illegal combinations to cause the property to sell at an undervalue, it, at the same time, creates a'free competition -among those disposed to buy. In some respects, the purchaser stands upon higher ground than the creditor. The latter, before ho can raise the question of fraud against a party claiming the property adversely, must reduce his claim against his debtor to a judgment at law, thereby establishing the justice of it.. Hafner, v. Irwin, 4 Ired. 532,. *72 A purchaser satisfies tbe law when be shows a judgment, and an execution and a sale under it. He has nothing to do with the creditor’s original claim. While, therefore, we guard against the danger of multiplying suits in Equity, it will be well to consider whether we shall not be introducing a greater evil by lessening the confidence of purchasers in titles acquired* under execution sales. Will it not, on the contrary, encourage competition at such sales, in giving confidence to bidders, by showing them- that they cannot only protect themselves at law, against the claims of a fraudulent donee, but that equity will aid and assist them in removing the cloud upon the title so created, and not leave them to the casualties of time and loss of evidence ? Years might elapse in the case of a female infant, to whom a parent makes a conveyance of property to defraud his creditors, before a purchaser at sheriff’s sale might be called on to litigate his title in a Court of law. Considering the evil pointed out by my brethren, as ensuing upon the establishment of the principle contended for by me, as problematical only, and that attempted to be shown by me as certain, and that the former, if certain, is not to be compared in importance with the latter, I should not have hesitated between the two : but, believing as I do, that the preventive power of a Court of Equity extends to the plaintiff’s case, I am compelled, however reluctantly, to dissent from my brethren.